## PHŒNIX INS. CO. v. AMERICAN TRUST & SAVINGS BANK et al. (No. 1416.)*

(Court of Civil Appeals of Texas. El Paso. Feb. 21, 1923. Rehearing Denied March 8, 1923.)

1. Insurance ⊚⟹229(2)—Mortgagee of automobile not "assured" in theft policy to receive notice of cancellation.

Where the only interest a mortgagee of an automobile had in a theft policy was its appointment to receive any money which might become due by reason of loss by theft which the mortgagor might sustain, the mortgagee was not the "assured" in the policy as respects validity of notice of cancellation to the mortgagee.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Assured.]

2. Insurance ⊚⟹229(3)—Mortgagee of automobile not authorized to accept notice of cancellation of theft policy.

Where the purpose of an insurance policy was to secure the owner of an automobile against loss by theft, and the only interest the mortgagee of the automobile had in the policy was its appointment to receive money which might become due from insurer by reason of loss by theft which the mortgagor might sustain, and the mortgage provided that if mortgagor failed to procure insurance then the mortgagee might do so, the fact that mortgagee was permitted to keep up the insurance did not authorize it to accept notice of cancellation of the policy.

3. Insurance ⊚⟹146(3)—Conditions of forfeiture strictly construed against insurer.

Conditions of forfeiture contained in insurance policies must be strictly construed against the company.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by the American Trust & Savings Bank and others against the Phœnix Insurance Company. From a judgment for plaintiff named and J. F. Mullin, defendant appeals. Affirmed.

Wallace & Cameron, of El Paso, for appellant.

Fred C. Knollenberg, C. W. Croom, and R. J. Channell, all of El Paso, for appellees.

WALTHALL, J. This suit was brought by the American Trust & Savings Bank of El Paso, Neil T. Shearman, and J. F. Mullin, against the Phœnix Insurance Company of Hartford, Conn., to recover on an insurance policy against loss by theft of an automobile,

The owner of the automobile, designated in the policy of insurance as the "assured," is Neil T. Shearman, and the policy insured him against loss by theft of the automobile. The policy contained the following clause:

"It is agreed that any loss or damage ascertained or proven to be due to the assured under this policy shall be held payable to American Trust & Savings Bank as interest may appear; subject however, to all the terms and conditions of this policy."

At the time the policy was issued and at the time of its loss by theft, there was in existence a chattel mortgage given by Sherman covering the automobile in question, in favor of the American Trust & Savings Bank, securing a note executed by Sherman and indorsed by Mullin. At the time of the theft of the automobile on March 14, 1922, the unpaid balance secured by the mortgage was $1,525. After the theft of the automobile, Shearman assigned his interest in the policy to Mullin. The insurance policy was for $2,000.

The mortgage contained the following clause:

"I hereby agree that I will, at my own expense, keep said automobile insured against loss by * * * theft, * * * in the sum of not less than the total of above-described note ($1,525.00) in some company approved by second party (appellee bank), loss if any under said policy to be made payable to second party, as his interest may appear and will deliver said policy to said second party, * * * and in the event I fail to procure said insurance second party may do so and the amount paid therefor by them shall be added to the principal sum due thereunder and bear interest at the rate of ten per cent. per annum and be secured by the lien of this instrument on said automobile."

The policy of insurance also contains the following clause:

"This policy may be canceled at any time by the company by giving to the assured a five (5) days' written notice of cancellation with or without tender of the excess of said premium above the pro rata premium for the expired term, which excess if not tendered shall be refunded, on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand. Notice of cancellation mailed to the address of the assured stated in the policy shall be sufficient notice."

The automobile at the time of its loss was worth about $2,700. Shearman paid the premium mentioned in the policy. The note mentioned in the mortgage was unsatisfied at the time of the theft of the automobile. No notice was ever given Shearman of the intention to cancel the policy, or of its cancellation.

The policy was actually applied for and taken out by the American Trust & Savings Bank; and the premium primarily actually paid by the bank by the bank's own check, Shearman repaying the bank, and the policy was delivered to its possession and retained by the bank. The insurance company's agent in issuing and delivering the policy did not know Shearman in the transaction of taking out the policy, other than is expressed in the policy. When the duplicate copy of the policy reached the home office of the insurance company at Hartford, the company sent a telegram to its agents at El Paso, Tex., to immediately arrange a cancellation of the policy. The local agents of the company called on the American Trust & Savings Bank and arranged for its cancellation at the expiration of the five days' notice on March 12th, at noon. The policy was surrendered by the bank to the insurance agents on the 13th of March, the policy marked canceled, and the pro rata unearned premium paid to and received by the bank. As stated, no notice of the cancellation of the policy or the intention so to do was given Shearman. The agents of the company knew Shearman, and of Shearman's mortgage to the bank, and of his interest in having the automobile insured, and knew his address, and that he was the

beneficiary in the policy. It was agreed that at the time the automobile was stolen on the 14th of March, Sherman owed the bank $1,525 on the note mentioned in the mortgage, and that the note was indorsed by Mullin. After the loss of the automobile and before the filing of the suit, Shearman assigned to Mullin his interest or claim against the insurance company, subject to the interest of the bank. This assignment was set up in the petition. With reference to the right of the bank the petition set up:

"That attached to said policy was a rider or clause with reference to the payment of any loss which might be sustained thereunder, substantially in the following language:

"'It is agreed that any loss or damage ascertained and proven to be due to the assured under this policy shall be held payable to the American Trust & Savings Bank as interest may appear, subject, however, to all the terms and conditions of this policy.'

"That the said American Trust & Savings Bank at the time of the execution and delivery of said policy and at the time of loss of said automobile, owned and held a note of said N. T. Shearman indorsed by plaintiff J. F. Mullin, representing an indebtedness of $1,500 principal, secured by a chattel mortgage upon the automobile above described, which indebtedness was then and is now outstanding, and the plaintiffs are entitled to have said indebtedness discharged from and by the proceeds of said policy, and for that purpose and to that extent said bank is interested in the subject-matter of this suit and joins herein as a plaintiff."

The insurance company refused payment of the policy, and suit was brought as above stated.

Plaintiff sued for the $2,000 mentioned in policy, attorney's fees, and damages provided for by article 4955, Vernon's Sayles' Texas Civil Statutes. Defendant answered by exceptions, general denial, and cancellation of the policy prior to the loss; that the bank had acted as the agent of Shearman and surrendered the policy for itself and Shearman; pleaded estoppel as to Shearman in denying the act of the bank in surrendering the policy; alleged that whatever interest the bank had in the policy had been surrendered by surrender of the policy.

The court sustained a special exception as to the penalty sued for, and no issue is presented as to that.

The case was tried with a jury and submitted upon special issues. On the one issue submitted the jury found that the automobile was stolen.

The court refused to submit special issues, as to whether the bank had authority from Shearman to waive the five days' written notice of the cancellation; whether the bank was authorized by Shearman to keep the automobile insured; whether the bank was the agent of Shearman in taking out the policy of insurance; whether the bank had an insurable interest in the policy; and whether

the bank waived the five days' written notice to Shearman of the cancellation of the policy.

Judgment was rendered that Shearman take nothing by his suit, and that the bank and Mullin have judgment for $1,525 to be paid to the bank and applied to the satisfaction of its debt secured by the mortgage on the automobile covered by the policy; and that Mullin have judgment for $475, the balance of the $2,000 for which the automobile was insured. The insurance company alone prosecutes this appeal.

### Opinion.

The doctrine of estoppel contended for by appellant has no application to the facts as disclosed by the record. The material facts in the record are undisputed.

[1] We do not concur in the contention of appellant that the bank was the "assured," as used in the policy. The cases cited do not sustain such contention. The bank was not the owner of the automobile, nor does the policy substitute the bank for the owner as the assured. Shearman, at any time, could have completely eliminated the bank from any interest whatever it had in the policy by the payment of the note and without affecting the policy. The purpose of the policy, and its express provision, was to secure Shearman, the owner of the automobile against loss by theft of the automobile. The only interest the bank had in the policy was its appointment to receive any money which might become due from the insurance company by reason of loss by theft which Shearman, the mortgagor, might sustain. The contract, as we construe it, is to indemnify the mortgagor against loss, and not a contract to indemnify the mortgagee. The provision in the policy that any loss "due the assured under this policy shall be held payable to American Trust & Savings Bank as its interest may appear—" does not constitute an assignment thereof to the mortgagee, but rather is an order on the insurance company to pay to the mortgagee an amount equal to its interest in case of loss by theft, a mere collateral security to the mortgagee for the mortgage debt. Jones on Mortgages (7th Ed.) § 406. To the same effect is the holding in Griffey v. N. Y. Central Ins. Co., 100 N. Y. 422, 3 N. E. 309, 53 Am. Rep. 202; Williamson v. Michigan Fire & Marine Ins. Co., 86 Wis. 393, 57 N. W. 46, 39 Am. St. Rep. 906. To hold that the bank is the "assured" in the policy would be to do violence to the purpose, intent, and reading of the policy itself, as the policy contract is between the company and Shearman and expressly names Shearman as the assured, and the reference in the policy to the payment of an amount of money to the bank as its interest may appear is but an incident to the main purpose of the policy, sometimes designated a rider or subsidiary clause to the policy.

[2] It is insisted that, as here, where the bank has been authorized to keep up the insurance, the bank could accept notice of the cancellation of the policy. The policy itself contains no provision that the bank, or anybody, could accept or waive notice for Shearman of the cancellation of or surrender of the policy for cancellation. Shearman testified, and there is no contradiction of his testimony, that—

"I never authorized anybody to cancel my policy for me. I never authorized any one to take any steps toward the cancellation of the policy."

We have no doubt but that an assured in a policy of insurance may, in the policy or independently of the policy, appoint an agent with the authority to do for him whatever he could do for himself in securing insurance, accepting notice, canceling and surrendering a policy of insurance, and it was so held by Mr. Chief Justice Willson in National Fire Insurance Co. v. Oliver (Tex. Civ. App.) 204 S. W. 367, and in which a writ of error was refused. To the same effect is the holding by Section A of the Commission of Appeals in Dalton v. Norwich Union Fire Ins. Soc., 213 S. W. 230, and in East Texas Fire Ins. Co. v. Blum et al., 76 Tex. 653, 13 S. W. 572.

[3] In the above cases, and other cases we have examined, the party held to be the agent of the insured was specially appointed by the insured to act for him in the matter of securing the policy, and representing him in respect thereto, or was acting for the insured in such way as that the acts of the assured were within the apparent scope of his authority. While there are some shades of difference in the opinions of the courts in stating the authority of a specially appointed agent, or general agent, and when the appointed agent's agency terminates, we have found no case in this state holding that one merely occupying the position of the bank, as in this case, would be the agent of the owner of the property, to the extent that he or it could accept or waive notice to the assured, and surrender the policy for cancellation unless the mortgage or the policy extends such special privilege to the mortgagee. It is well established in this state that the conditions of forfeiture contained in insurance policies must be strictly construed against the company. Dumphy v. Commercial Union Assurance Co., 107 Tex. 107, 174 S. W. 814. Mr. Jones on Mortgages clearly states the above as the rule in his work on Mortgages (7th Ed. § 406). In the absence of special authority extended to a mortgagee whose interest is secured in the policy, the policy itself limits the power of the mortgagee to that of taking out the policy of insurance with the payment to the mortgagee as his interest may

appear, and he has no other authority unless expressed in the mortgage or policy. Glasscock et al. v. Liverpool, London & Globe Ins. Co. (Tex. Civ. App.) 188 S. W. 281, in which a writ of error was denied. In that 'case Mr. Chief Justice Key cites some cases which seem to hold otherwise, but we think that opinion states the law of this state. See, also, Insurance Co. v. Davis, 37 Tex. Civ. App. 348, 84 S. W. 260, in which a writ of error was refused.

We have concluded that the case was properly decided, and it is therefore affirmed.